## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LINDA SUSAN PINCA,** | : | **CIVIL NO. 1:17-CV-1519** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **NANCY BERRYHILL** | : | |
| **Acting Commissioner of Social** | : | |
| **Security,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

## I.    Introduction

In evaluating Social Security appeals we are enjoined to apply a deferential standard of review, which calls upon us simply to determine whether substantial evidence, a quantum of proof that is less than a preponderance but more than a scintilla of evidence, supports the ALJ's findings. Governed by this deferential standard of review we turn to the instant case, a Social Security appeal brought by Linda Susan Pinca challenging the adverse decision of an Administrative Law judge (ALJ), who denied her claim for disability benefits. Ms. Pinca asserted before the ALJ, and on appeal, that the combined effects of her lumbosacral myofascitis, fibromyalgia, diabetes mellitus, hypothyroidism, trochanter bursa tenderness, obstructive sleep apnea, hypokalemia, hyperlipidemia, and

osteoarthritis of the right knee were totally disabling. However, a medical consultant, who reviewed Pinca's treatment records, found that she could perform an array of light work. Moreover, while Pinca's treating physician submitted reports opining that she was disabled, those reports were contradicted by the doctor's own examination and treatment results, which thoroughly documented numerous benign or essentially neutral medical findings. Recognizing the equivocal nature of this medical record, and given the very deferential standard of review which applies here, for the reasons set forth below, we conclude that the ALJ's decision is supported by substantial evidence and is adequately explained in a written decision that conforms to the legal and regulatory guidelines governing Social Security claims. Accordingly that the decision will be affirmed and the plaintiff's appeal will be denied.

## II.   <u>Statement of Facts</u>

Linda Susan Pinca is in her early 60's and was approximately 52 years old at the time of the alleged onset of her disability in 2008. Pinca has an associate's degree education, (Tr. 27 ), and from 2002 through 2008, worked for the Commonwealth of Pennsylvania, at the Pennsylvania Higher Education Assistance Agency (PHEAA), (Tr. 37; Tr. 133), serving as the department secretary in Records Management before being promoted to a position of department secretary for the Human Resources office. (Tr. 38.)

For a number of years, Pinca experienced low back pain at work, (Tr. 508), but Pinca alleges that this back pain became disabling by the Summer of 2008, when she left her employment at PHEAA. The onset of Pinca's claimed disability appears to have coincided with her being laid off from her employment. As Ms. Pinca explained to her pain management physician, Dr. Cho, in June of 2008:

> The patient stated the state plans to have lay offs, and she will be laid off from 6/27. She would like to get benefits continuously, and then wants to apply for disability. I requested the patient to call the state disability to send a form for me to fill out.

(Tr. 456.)

In fact, consistent with his June 2008 treatment notes, over a span of years Dr. Cho completed a number of disability forms for the state retirement system indicating that Pinca was not able to work regularly. (Tr. 473-87.) These periodic reports submitted by the doctor to the state retirement system stood in stark contrast, however, to Dr. Cho's actual treatment records documenting his care and treatment of Pinca from 2008 through 2014. (Tr. 376-461.) Those treatment notes and examination records consistently reported that Pinca responded well to her medication; reported improvement in her condition over time; generally stated an ability to sleep through the night on Pinca's part; and often reported that she experienced clear cognition. (*Id*.) These medical treatment notes also documented a significant range of motion in Pinca's cervical spine and shoulder, while confirming some restrictions in her lumbar spine mobility. Pinca's examination

results likewise revealed either essentially normal, or only very mildly limited, range of motion of her spine, normal strength in her legs, negative straight leg raises, and normal reflexes. (Tr. 387; 390; 392-427; 429; 431-40; 442-45; 449; 451; 453-55; 457.) Furthermore, those treatment notes repeatedly found that Pinca could "resume all activities," a finding which was inconsistent with total disability. (*Id.*) [1]

---

[1] For example, these treatment records documented the following positive findings over time: **May 27, 2009**: "Pain is controlled reasonably well with the current medications." (Tr. 444). **October 30, 2009**: "Even with the colder weather, she is doing much better now than a month ago . . . Pain is controlled better . . . Concentration is better." (Tr. 439). **April 30, 2010**: "Back pain is not too bad . . . She has better concentration . . . Cognitively ok." (Tr. 433). **March 18, 2011**: "Overall, pain is controlled fairly well with the current medications. She is able to do a lot of activities that she could not do before. More of a problem is mild cognitive problems, but able to function." (Tr. 422). **December 27, 2011**: "She is able to perform a lot of activities. ADD is controlled well. . . No cognitive problems." (Tr. 412). **April 18, 2012**: "Overall, pain is controlled at this time . . . Cognitively good . . . Able to resume all activities." (Tr. 408). **October 30, 2012**: "So far, overall, she is doing okay . . . Cognitively fine. Patient is doing great. She has been able to resume all activities." (Tr. 401). **December 28, 2012**: "She is very happy overall. Some days she has a bad flare up. No adverse reactions with medications. Independent all level of activity." (Tr. 399). **February 26, 2013**: "There is still some more or less pain, but overall, she is doing great. She has been able to resume all activities." (Tr. 397). **June 19, 2013**: "ADD is controlled without medication . . . With increase in activities and exercises, fast walking/slow walking . . . she has some increase in her pain . . . No adverse reactions to medications." (Tr. 393). **August 14, 2013**: "The current medications seem to be working good. She started to do walking exercises and gradually increasing, about 40-45 minutes, and she has some aching pain but overall feels good. . . No adverse reactions to medications." (Tr. 391). **November 8, 2013**: "Adderall 30 seems to be working much better. Her concentration is better and she has more energy. Able to perform a lot of activities." (Tr. 388). **December 6, 2013**: "The current medications

It was against this medical and factual backdrop that the ALJ conducted a hearing into Pinca's disability application on February 17, 2016. (Tr. 32-57.) Ms. Pinca elected to represent herself at this hearing, and she and her spouse testified regarding the limitations she experienced due to her medical conditions. (Tr. 34-52.) A vocational expert also testified. In his testimony, the Vocational Expert explained that Pinca's past work was rated by the Department of Labor Dictionary of Occupational Titles as sedentary in nature, but as she described her job, those job duties would have entailed a range of light work. The Vocational Expert further testified in response to hypothetical questions posed by the ALJ that Pinca could return to her past work, whether rated as sedentary or light work, given the degree of impairment described by the ALJ. (*Id.*)

Following this hearing, the ALJ propounded medical interrogatories upon an independent medical expert, Dr. Louis Fuchs. (Tr. 695.) After reviewing Pinca's medical records, Dr. Fuchs opined on March 24, 2016, that she essentially retained the ability to perform light work. (Tr. 696-705.) Specifically, Dr. Fuchs found that Pinca retained the ability to sit for an 8-hour period in a workday, stand for 2 hours, and walk for 2 hours. (Tr. 697.) He further opined that Pinca could lift and carry up to ten pounds continuously, and lift and carry 11 to 20 pounds occasionally. (Tr. 696.) He also stated that Pinca could occasionally reach

seem to be working very good. Pain is not too bad, depending on her activity level and the weather. Overall, she is doing good." (Tr. 387).

overhead, frequently operate foot controls, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders or scaffolds. (Tr. 698-99.)

On May 17, 2016 the ALJ issued a decision denying Pinca's claim for disability benefits. (Tr. 9-19.) In this decision, the ALJ first found at Step 1 of the five-step sequential process that applies to disability claims that Pinca met the insured status requirement of the Social Security Act through December 31, 2013, making hers an essentially closed period claim for benefits from 2008 through December 31, 2013. (Tr. 10, 12.) At Step 2, the ALJ concluded that Pinca had the following severe impairments: lumbosacral myofascitis, fibromyalgia, diabetes mellitus, hypothyroidism, and trochanter bursa tenderness. (Tr. 13.) At Step 3, the ALJ concluded that none of these impairments met a listing which would define her as *per se* disabled. (Tr. 13-14.)

The ALJ then found that Pinca retained the residual functional capacity to perform a limited range of light work. Specifically, the ALJ found: "After careful consideration of the entire record, . . .  that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except the claimant could occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. The claimant could frequently balance and occasionally stoop, kneel, crouch, and crawl." (Tr. 14.)

In reaching this conclusion the ALJ assessed the competing medical evidence, and assigned greater weight to the opinions expressed by Dr. Fuchs, the medical consultant, than the views tendered by Dr. Cho. (Tr. 14-18.) The ALJ gave great weight to the opinion of Dr. Fuchs, explaining in this decision that Dr. Fuchs' opinions were congruent with the medical records, which "contained multiple examinations that were within normal limits, and [showed] that the claimant's spinal range of motion was only slightly limited." (Tr. 17.) Therefore,

> Given the consistency between the objective evidence and Dr. Fuchs's limitations, the [ALJ] g[ave] great weight to the medical expert's assessment that [Pinca] could perform light level work, However, due to the normal physical examinations, the [ALJ] g[ave] little weight to Dr. Fuchs assessment that the claimant could only stand/walk for 4 hours during an eight-hour workday. Based on the normal physical examinations, the [ALJ] f[ound] that [Pinca] could stand/walk for 6 hours during an eight-hour workday and perform the full range of light work as defined in the Dictionary of Occupational Titles.

(Tr. 18.)

In contrast the ALJ afforded little weight to Dr. Cho's medical opinions, finding that:

> Although Dr. Cho was the claimant's treating pain management specialist, his assertion that the claimant was unable to do any kind of work was inconsistent with his own findings on examination, Several times throughout the period at issue,[Pinca] reported that her pain medications were effective in managing her pain, and that she had resumed some or all of her activities (see, for example, Exhibit 6F/22, 26, and 33), Further, as indicated by Dr. Fuchs above, although [Pinca] may have had some decreased spinal range of motion, the remainder of the of findings on physical examination were within normal limits, Given the inconsistency between the objective evidence

and Dr. Cho's certifications in support of the claimant's state disability
claim, the [ALJ] g[ave] Dr. Cho's opinions little weight.

(*Id*.)

Having made these findings the ALJ concluded at Step 4 of this analytical
process that Pinca could return to her past work, work which the Vocational Expert
testified was routinely done at the sedentary level of exertion, but work which the
expert stated Pinca had performed at a light level of exertion. (Tr. 18-19.) The ALJ
therefore concluded that Pinca was not disabled and denied this application for
disability benefits. (*Id*.)

This appeal followed. (Doc. 1.) On appeal, Pinca argues that the ALJ erred
in the assessment of the medical evidence and in creating an RFC based upon this
evidence. Pinca also contends that she met the exacting legal standards for
disability as a matter of law at Step 3 of this analytical process since she satisfied
all of the requirements of disability listings for joint and spinal disease. This case is
now fully briefed and is, therefore, ripe for resolution.

For the reasons set forth below, the decision of the Commissioner will be
affirmed.

## III. Discussion

### A. Evaluation of Social Security Disability Claims

Resolution of the instant social security appeal involves an informed
consideration of the respective roles of two adjudicators—the ALJ and this court.

At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive disability benefits, a claimant must present evidence which demonstrates that the claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

Furthermore,

> [a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if he [or she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). Finally, to qualify for benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the

insurance program and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *Id.*

Steps 2 and 3 of this sequential analysis are governed by familiar legal standards:

> With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' *McCrea v. Comm. of Soc.* Sec.,370 F.3d 357, 360 (3d Cir.2004); *Newell v. Comm. of Soc. Sec.,* 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this

showing has been made is to be resolved in favor of the applicant.' *Id."* *Velazquez v. Astrue,* No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' *McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. *Id.* at 361. Rather, ... [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' *Id."* *Kinney v. Comm'r of Soc. Sec.,* 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with close scrutiny." *McCrea v. Commissioner of Social Sec.,* 370 F.3d 357, 360 (3d Cir.2004).

Once this threshold, *de minimus* showing is made, "[i]n step three, the ALJ must determine whether [a claimant's] impairment matches, or is equivalent to, one of the listed impairments. *See Plummer,* 186 F.3d at 428. If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary. *See id"* *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 119 (3d Cir.2000). For muskoskeletal ailments under Listing 1.04, these listing criteria provide that "functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment. The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted, or be expected to last, for at least 12 months." 20 C.F.R. § 404, app. 1. . . . .[The plaintiff] as the claimant, "bears the burden of presenting medical findings showing that her impairment meets or equals a listed impairment. *Burnett v. Commissioner,* 220 F.3d 112, 120 n. 2 (3d Cir.2000). 'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.' *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)." *Hernandez v. Comm'r of Soc. Sec.,* 198 F. App'x 230, 234 (3d Cir.2006). This Step 3 analysis must also be accompanied by a discussion of the evidence which is sufficient to permit informed

judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 120 (3d Cir.2000).

*Dotzel v. Astrue*, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22, 2014).

Before considering step four in this process, the ALJ must also determine the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. §§ 404.1545, 416.945. In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable nonsevere impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79

(W.D. Pa. 2013) (quoting *Gormont v. Astrue,* Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in a factual setting where a factually-supported and well-reasoned medical source opinion regarding limitations that would support a disability claim is rejected by an ALJ based upon a lay assessment of other evidence by the ALJ. In contrast, when an ALJ fashions a residual functional capacity determination on a sparse factual record or in the absence of any competent medical opinion evidence, courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. *See Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *Cummings v. Colvin*, 129 F. Supp. 3d

209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's residual functional capacity is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir.2002).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work. 42 U.S.C. §1382c(a)(3)(H)(i)(incorporating 42 U.S.C. §423(d)(5) by reference); 20 C.F.R. §416.912; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). Once the claimant has met this burden, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §416.912(f); *Mason,* 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic procedural and substantive requirements. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*,

642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he [or she] has rejected and which he [or she] is relying on as the basis for his [or her] finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

**B.   Judicial Review of ALJ Determinations – Standard of Review**

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. § 405(g) or 42 U.S.C. §1383(c)(3) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *see also Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198,

200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer*, 186 F.3d at 427 (quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason*, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S. Ct. 1018, 16 L. Ed. 2d 131 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981); *Leslie v. Barnhart*, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003). The question before this Court, therefore, is

not whether Pinca is disabled, but whether the Commissioner's finding that she was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 U.S. Dist. LEXIS 31292, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations omitted); *Burton v. Schweiker*, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); *Ficca v. Astrue*, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012)("[T]he court has plenary review of all legal issues . . . .").

## C. Legal Benchmarks for the ALJ's Assessment of Medical Treatment and Opinion Evidence

The Commissioner's regulations also set standards for the evaluation of medical evidence, and define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In deciding what weight to accord to competing medical opinions and evidence, the ALJ is guided by factors outlined in 20 C.F.R. §404.1527(c). "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p, 1996 WL 374180 at *2. Treating sources have the closest ties to the claimant, and therefore their opinions generally entitled to more weight. *See* 20 C.F.R. §404.1527(c)(2)("Generally, we give more weight to opinions from your treating sources..."); 20 C.F.R. §404.1502 (defining treating source). Under some circumstances, the medical opinion of a treating source may even be entitled to controlling weight. 20 C.F.R. §§04.1527(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (explaining that controlling weight may be given to a treating source's medical opinion only where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and it is not inconsistent with the other substantial evidence in the case record).

Where no medical source opinion is entitled to controlling weight, the Commissioner's regulations direct the ALJ to consider the following factors, where applicable, in deciding the weight given to any non-controlling medical opinions: length of the treatment relationship and frequency of examination; nature and extent of the treatment relationship; the extent to which the source presented relevant evidence to support his or her medical opinion, and the extent to which the

basis for the source's conclusions were explained; the extent to which the source's opinion is consistent with the record as a whole; whether the source is a specialist; and, any other factors brought to the ALJ's attention. 20 C.F.R. §404.1527(c).

Furthermore, as discussed above, it is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter,* 642 F.2d at 704. This principle applies with particular force to the opinions and treating records of various medical sources. As to these medical opinions and records: "Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason*, 994 F.2d at 1066)); *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

Oftentimes, as in this case, an ALJ must evaluate medical opinions and records tendered by both treating and non-treating sources. Judicial review of this aspect of ALJ decision-making is guided by several settled legal tenets. First, when presented with a disputed factual record, it is well-established that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of  Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Thus, "[w]here, . . . , the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ

may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason,* 994 F.2d at 1066). Therefore, provided that the decision is accompanied by an adequate, articulated rationale, it is the province and the duty of the ALJ to choose which medical opinions and evidence deserve greater weight. Further, in making this assessment of medical evidence:

> An ALJ is [also] entitled generally to credit parts of an opinion without crediting the entire opinion. *See Thackara v. Colvin,* No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D.Pa. Mar. 23, 2015); *Turner v. Colvin*, 964 F. Supp. 2d 21, 29 (D.D.C. 2013) (agreeing that "SSR 96–2p does not prohibit the ALJ from crediting some parts of a treating source's opinion and rejecting other portions"); *Connors v. Astrue,* No. 10–CV–197–PB, 2011 WL 2359055, at *9 (D.N.H. June 10, 2011). It follows that an ALJ can give partial credit to all medical opinions and can formulate an RFC based on different parts from the different medical opinions. *See e.g., Thackara v. Colvin,* No. 1:14–CV–00158–GBC, 2015 WL 1295956, at *5 (M.D. Pa. Mar. 23, 2015).

*Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

Moreover, in determining the weight to be given to a medical source opinion, it is also well-settled that an ALJ may discount such an opinion when it conflicts with other objective tests or examination results. *Johnson v. Comm'r of Soc. Sec.,* 529 F.3d 198, 202–03 (3d Cir. 2008). Likewise, an ALJ may conclude that discrepancies between the source's medical opinion, and the doctor's actual treatment notes, justifies giving a medical source opinion little weight in a

disability analysis. *Torres v. Barnhart*, 139 F. App'x 411, 415 (3d Cir. 2005). Additionally, "an opinion from a [medical] source about what a claimant can still do which would seem to be well-supported by the objective findings would not be entitled to controlling weight if there was other substantial evidence that the claimant engaged in activities that were inconsistent with the opinion." *Tilton v. Colvin,* 184 F. Supp. 3d 135, 145 (M.D. Pa. 2016).

### D. The ALJ's Step 3 Determination is Supported by Substantial Evidence

At the outset, in this appeal, Pinca argues that the ALJ erred at Step 3 of this sequential disability analysis process. Specifically, Pinca contends that she met all of the exacting requirements for a *per se* finding of disability under the Commissioner's listings relating to spinal and joint disease. However, given her own treating physician's descriptions of her ability to walk, this contention warrants only brief consideration on appeal.

At Step 3 the ALJ is required to determine whether, singly or in combination, a claimant's ailments and impairments are so severe that they are *per se* disabling and entitle the claimant to benefits. As part of this step three disability evaluation process, the ALJ must determine whether a claimant's alleged impairment is equivalent to a number of listed impairments, commonly referred to as listings, which are acknowledged as so severe as to preclude substantial gainful activity. 20 C.F.R. §416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, App. 1; *Burnett*

*v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 119 (3d Cir.2000). In making this determination, the ALJ is guided by several basic principles set forth by the social security regulations, and case law. First, if a claimant's impairment meets or equals one of the listed impairments, the claimant is considered disabled *per se,* and is awarded benefits. 20 C.F.R. §416.920(d); *Burnett*, 220 F.3d at 119. However, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equivalent in severity to *all* the criteria for the one most similar impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); 20 C.F.R. §416.920(d). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Id.*

In this case, Pinca alleged that the ALJ erred in failing to recognize that she was disabled as a matter of law under both Section 1.02 and 1.04 of the Social Security Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1, which related to spinal and joint disorders. Yet, both of these listings required a showing that Pinca could not ambulate effectively to meet the listing requirements. In this case the ALJ found that no such showing was made here by Pinca, and substantial evidence supports this conclusion. Indeed, the treatment notes of Pinca's own physician, Dr. Cho, contradict any claim that she could not ambulate effectively. Thus, for example, Dr. Cho's treatment records documenting his care and treatment of Pinca

from 2008 through 2014 repeatedly commented upon her ability to ambulate effectively, noting that she was "[a]ble to walk heels/toes;" (Tr. 386, 397), that she was walking up to 40-45 minutes; (Tr. 391), and that she was starting to do fast walking exercises. (Tr. 393.)

In light of these clinical findings that Pinca retained the ability to walk effectively, and given the requirement at Step 3 that a claimant satisfy all of the criteria for a listing, the lack of any evidence to support a finding that Pinca could not ambulate effectively is fatal to this Step 3 argument. We, therefore, will affirm the ALJ's Step 3 determination.

### E. The ALJ's Evaluation of the Medical Evidence and RFC Assessment Are Supported by Substantial Evidence

Finally, with respect to the assessment of the various medical opinions tendered in this case and the residual functional capacity assessment that flowed from the weighing of this evidence, we recognize that, "[w]here . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Mason*, 994 F.2d at 1066). Therefore, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). However, as we have also noted:

treating physician opinions do not control this determination. State agency doctors are also entitled to have their opinions given careful consideration. As the court of appeals has observed:

> "[t]he law is clear ... that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity," *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011).State agent opinions merit significant consideration as well. *See* SSR 96-6p ("Because State agency medical and psychological consultants ... are experts in the Social Security disability programs ... 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] ... to consider their findings of fact about the nature and severity of an individual's impairment(s)....").*Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 361 (3d Cir. 2011).

*Deiter v. Berryhill*, No. 3:16-CV-2146, 2018 WL 1322067, at *6 (M.D. Pa. Feb. 5, 2018), *report and recommendation adopted*, No. 3:16-CV-2146, 2018 WL 1315655 (M.D. Pa. Mar. 14, 2018).

In the instant case, the opinion of the ALJ meets all of the benchmarks prescribed by law. The ALJ's decision to afford less weight to the opinions expressed by Pinca's treating physician, Dr. Cho, was fully supported by substantial evidence in the administrative record, and the grounds for that decision were cogently explained by the ALJ in this decision. Indeed, the ALJ's judgment on this score, weighing medical opinion evidence, is legally supported in several independent ways. At the outset, we note that Pinca's treating source opinions were internally inconsistent in some respects and were inconsistent with the treatment notes and clinical records compiled by that treating source.

In fact, Dr. Cho's treatment notes and examination records stood in stark contrast to his medical opinions. These treatment notes consistently reported that Pinca responded well to her medication, described improvement in her condition over time, generally reported an ability to sleep through the night, and often observed that Pinca showed clear cognition. (Tr. 376-461.) These medical treatment notes also documented a significant range of motion in Pinca's cervical spine and shoulder, while confirming some restrictions in her lumbar spine mobility. Pinca's examination results likewise revealed either essentially normal, or only very mildly limited, range of motion of her spine, normal strength in her legs, negative straight leg raises, and normal reflexes. (Tr. 387; 390; 392-427; 429; 431-40; 442-45; 449; 451; 453-55; 457). Furthermore, the treatment notes repeatedly found that Pinca could "resume all activities," a finding which was inconsistent with total disability. (*Id.*) Given that an ALJ may conclude that discrepancies between a source's medical opinion and the source's actual treatment notes justifies giving a medical source opinion little weight in a disability analysis, *Torres v. Barnhart*, 139 F. App'x. 411, 415 (3d Cir. 2005), the disparity between the treating source opinions regarding Pinca's impairments and the treatment notes, which assessed Pinca's medical condition in a far more favorable light, justified the ALJ's decision to give limited weight to Dr. Cho's opinions.[2]

---

[2] Pinca also argues that the case should be remanded in order to allow the ALJ to

Likewise, the ALJ's assessments of Dr. Fuchs' medical opinion also fully complied with the dictates of the law and was fully supported by substantial evidence. On this score, the ALJ's decision examined Dr. Fuchs' expert opinion, evaluating that opinion against the objective clinical evidence. Finding that Dr. Fuchs' opinion that Pinca could perform a range of light work was entirely consistent with Dr. Cho's treatment notes, which also stated that she could "resume all activities," the ALJ accepted and relied upon that opinion, with one exception. Instead of concluding that Pinca could walk or stand for 4 hours a day, as Dr. Fuchs had found, the ALJ determined that the medical evidence supported an ability on Pinca's part to stand or walk for up to 6 hours per day. However, the ALJ provided a cogent rationale for this aspect of the RFC assessment, one which was rooted in a consideration of the evidence, stating that Pinca's examination results revealed either essentially normal, or only very mildly limited range of motion of her spine, normal strength in her legs, negative straight leg raises, and normal reflexes. (Tr. 387; 390; 392-427; 429; 431-40; 442-45; 449; 451; 453-55; 457.) That rationale, therefore, was grounded in substantial evidence in the record of this case, and reflected an informed and careful evaluation of all of the evidence.

---

further inquire of Dr. Cho regarding this discrepancy between his opinions and treatment records, but such a remand would now be a futile gesture in light of the fact that it is reported that Dr. Cho passed away while this appeal was pending.

Having made these judgments regarding the medical opinion evidence, we find no error in the ALJ's residual functional capacity assessment which flowed from and was based upon this evaluation of the medical opinions rendered here. That RFC assessment, which is supported by substantial evidence, simply may not now be set aside on appeal. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).[3]

## IV.    Conclusion

In sum, the ALJ's assessment of the evidence in this case fully complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant like Pinca can demand in a disability proceeding. Therefore, notwithstanding Pinca's argument that this evidence might have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" *Monsour Med. Ctr. v. Heckler,* 806 F.2d 1185, 1190–91 (3d Cir. 1986) (citing *Hunter Douglas, Inc. v. NLRB,* 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations we conclude that substantial evidence supported the ALJ's

---

[3] In any event, given the Vocational Expert's testimony that Pinca's prior work could be performed either at a sedentary level or at a light work exertional level, any error in crafting a light work RFC would have been harmless in this case, since a sedentary work RFC would also support a finding that Pinca could return to her past relevant work.

evaluation of this case. Therefore, we will affirm this decision, direct that judgment be entered in favor of the defendant, and instruct the clerk to close this case.

An appropriate order follows.

So ordered this 1st day of May, 2018.

/s/  Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge